**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| **v.** | : | **CRIMINAL NO. 26-cr-491** |
| **GUANGTIAN HA** | : | |

**GOVERNMENT'S MOTION FOR PRETRIAL DETENTION**

Over the course of approximately seven months, Defendant Guangtian Ha engaged in a targeted, pervasive course of cyberstalking that terrified his coworker ("Victim 1") and Victim 1's family by posting Victim 1's home address, infant child's name, a photograph of the family's mailbox, countless antisemitic slurs and threats, and reference to real-time observation of their home. Ha used anonymous X (formerly Twitter) accounts to create the posts that instilled terror in his victims and employed additional obfuscation measures to prevent the victims and law enforcement from discovering his true identity. The defendant has demonstrated a hateful obsession with the victims, and his proximity to them creates a clear danger that necessitates his detention pending trial.

## I. FACTS & EVIDENCE

The defendant's threatening course of conduct began in October 2025 when he replied to a post that his Haverford College coworker, Victim 1, had made on X with a Google maps picture of Victim 1's home mailbox and the "eyes" emoji (👀), denoting that Victim 1's house was being surveilled. The defendant made that post from X account "America1st33509." This account was created approximately 14 minutes prior to posting the picture of Victim 1's mailbox using an anonymous, unattributable email account. The account's creation IP address was traced

to a Verizon IP address subscribed to the defendant's home and cell phone number in the name "Ganglion Ha." FBI agents were unable to locate any records of a "Ganglion" Ha existing.

Victim 1 and Victim 1's spouse, Victim 2, were frightened by the post. At the time, they had three minor children, including a newborn, at home, and began to fear for their safety. Victims 1 and 2 contacted Google and requested that their house be blurred on Google maps. On October 15, 2025, Google acknowledged that the request would be honored within 24 hours. The victims did not know that the defendant, who lives in the same community, was behind the account and that blurring their home on the internet would not prevent the harassment. They also installed security system and posted an alarm-system sign in their yard.

The defendant's threats resumed in January 2026. He created another anonymous account—America1stLM—using an IP address assigned to his home and began sending hateful, threatening messages directed to Victim 1.[1] For example, on February 2, 2026, the defendant replied to one of Victim 1's posts saying: "No one gives a fuck, jew. Get out of my country. You don't belong here. The fuhrer is coming, rats." Later that day, he replied to an X conversation between Victim 1and another female user, stating "jewess, the goyim[2] in America are waking up and we are going to deal with you all" and later "Jewess flustered? Wait for the day when the fuhrer returns." Five days later, the defendant wrote "LM jews are going to have it big time jew. Remember this. You scums have had it too easy, Goyim are taking America back, blood-guzzling demons."

[1] All of the defendant's posts discussed in this memorandum were made in reply to posts that Victim 1 made on X or contained Victim 1's X username. Accordingly, all of the posts were directed specifically toward Victim 1.

[2] Goyim is a Hebrew or Yiddish word meaning "non-Jew." In recent years, the word has been co-opted by anti-Semitic groups as a mocking identifier for their members.

The defendant's menacing course of conduct continued throughout February 2026. On February 17th, he replied to a post that Victim 1 had authored, saying "There is nothing wrong to hate the jews. All normal Americans should, and I am glad to see more are waking up to the demonic evil of the jews." The next day, he posted "If jews are so special then they should also be placed in special camps and received special treatments." On February 20th, the defendant wrote "Jew pig, get the fuck out of Lower Merion" and "Jew get the fuck out of my country."

On February 27th, the defendant authored a post that ensured Victim 1 knew that his tormentor had in-real-life access to the victims' home. He wrote: "The goyim have woken up, jew. Run. Flee. Leave. Blurring your home on google map and installing a security camera next to your mailbox won't help." The victims' home had, in fact, been blurred on Google maps at the time of this post, and online open-source imagery of the house did not show the security cameras that they had installed to protect themselves. Thus, the defendant's post chillingly ensured that the victims knew their stalker had actually seen their home.

The next day, Victim 1's spouse moved out of the house with their three minor children. She stayed with family members for approximately one week. The defendant made three posts that day: "Show me some dead jews, [Victim 1]," "Let there be an October 7[3] all day every day. Make it 6 million. Exterminate the jews," and "Get the fuck out of my country, jew. Go back to your jew land. Don't force us to kick you out. Lower Merion will be cleansed of the jew filth."

X suspended the America1stLm account on March 31, 2026. Two weeks later, the defendant created a third account, lm_GoyimDL, once again using an anonymous email account and a Verizon IP address that was subscribed to his home address. On April 15, 2026, the defendant posted "Fat jew, leave lower merion" in response to a tweet from Victim 1. A minute

[3] October 7, 2023, was the date of the largest terrorist attack in Israel's history which resulted in more than 1300 Israelis killed and an addition 1400+ injured.

later, he posted "Jew, watch your [Victim 1's minor child's name]. There shall be sign." At the time of the post, Victim 1's child who was named in the post was about seven months old. The lm_GoyimDL account was suspended that same day.

Undeterred, the defendant created a fourth account on April 16, 2026, under the name "DlGoyim." The account was created using an anonymous email account and the same Verizon Fios IP address assigned to the defendant's residence that was used to create the lm_GoyimDL account. On the date the account was created, the defendant twice responded to Victim 1's post and wrote Victim 1's true home address. Over the course of the next week the defendant wrote another series of threats in response to Victim 1's posts, including the following:

- [Victim 1], the jewish state will stop existing, whether you like it or not, which is why as an Israeli zio jew you want to recreate america in iSrAeL's image. This won't work. You and your family have no future here. Homeless dogs jews will once again become, if you do survive

- You have no place to go back to bc even you cannot stand your own jewish state, and america will never become yours. Your sad pathetic life. Your children will hate you for bringing them to this world

- That's right, [Victim 1]. The end of American jews is close. Let's start with the jews in Lower Merion. Watch out jewish nigga

- In case you want to know, guys: [Victim 1's street address and town of residence]

- Yo, watch out, jewish nigga. [Victim 1's street address]

- Nothing wrong to hate jews. We started to decline the moment we stopped hating, eradicating and expelling jews. Babylonians knew, the Romans knew, the Spaniards knew. American jews have been exposed. Fuck anti-Zionism. HH.[4]

The defendant continued to threaten Victim 1 using the DLGoyim account until the end of May 2026. On May 10, 2026, the defendant posted: "Eliminate the jewish cockroaches. Exterminate the jewish state. [V1], you will have nowhere to go. Your family has no future in

[4] Within antisemitic groups, H.H. is a common abbreviation for "Heil Hitler."

the US. Give it another 10 years, and you shall see a true holocaust." On May 11th, he posted "[Victim 1's home address]. [Victim 1], cameras won't help you." And on May 20th, he posted Victim 1's home address, township of residence and the bullseye/target emoji: 🎯. The DLGoyim account was suspended on May 21, 2026.

These posts had devastating, lasting effects on Victim 1 and their family. On two occasions, Victim 1's spouse moved out of their home with their three small children. The victims did not allow their children to play in the front yard of the home, nor did they allow them to wait for the school bus to take them to school each morning. They have purchased curtains to prevent any person from seeing inside the home and have considered moving from their home entirely. They recognized from the content of the posts that the stalker had access to their home and knew the name of their infant child.

FBI agents began investigating the threats and attributed the accounts to the defendant primarily through tracing IP addresses. As stated above, all of the anonymous accounts were created using IP addresses assigned to the defendant's home. Additionally, the America1stLM and lm_goyimDL accounts were logged in from the defendant's home IP address on at least 20 occasions. The accounts were also accessed using IP addresses reserved for faculty and staff at Haverford College, where the defendant is employed. Records provided by Haverford College showed that the accounts were accessed from a device that authenticated to Haverford College's internet using the defendant's e-mail address. Finally, investigators determined that the accounts were accessed from Verizon Wireless IP addresses on 45 occasions. Verizon records showed that the defendant's cell phone number was utilizing those IP addresses on 43 of the 45 times of access.

## II. PENALTIES

The defendant is charged with one count of cyberstalking pursuant to 18 U.S.C. § 2261A(2). The statutory maximum for cyberstalking is five years' imprisonment, three years of supervised release, a $250,000 fine, and a $100 special assessment.

## III. ARGUMENT

The defendant should be detained pending trial. As a preliminary matter, a detention hearing is required in this case because there is a serious risk that the defendant will attempt to threaten, injure, or intimidate a prospective witness in this case (Victims 1 and 2). 18 U.S.C. § 3142(f)(2)(b). The victims live in close proximity to the defendant. He has demonstrated that he knows where the victims live and has visited their home after Victim 1 enacted security measures in response the defendant's threats. Those security measures were not visible using open-source map imagery, and the defendant's reference to them in his threatening messages would only be possible by viewing the victims' house in person. Additionally, Victim 1 and the defendant are coworkers at Haverford College and their offices are in the same building.[5] He clearly has the ability to access the victims' home during the pendency of this prosecution.

Additionally, the defendant's course of conduct shows that he has a hateful obsession with Victim 1 and his family. He created anonymous accounts over the course of several months and barraged Victim 1 with more than 50 threatening messages. The depth of the defendant's hatred and his desire to instill fear in Victim 1 and his family cannot be overstated. The defendant invoked the Holocaust, stating that Victim 1 will have "nowhere to go," expressing his desire to "[e]liminate the jewish cockroaches" and vowing that Victim 1 would see "a true holocaust." The defendant singled out Jewish residents of Lower Merion as where he would

---

[5] The defendant is on sabbatical this year, but there is no indication that his access to the building has been revoked.

begin and invoked Adolf Hitler to further threaten and intimidate Victim 1, as seen in the posts below:






The defendant repeatedly told Victim 1 to "watch out" and warned Victim 1 that he would not survive the impending "cleans[ing]" of Jewish people from Lower Merion. All the while, the defendant repeatedly posted Victim 1's home address alongside emojis that clearly suggested the victims were being watched and targeted. These facts can only lead to one conclusion: the defendant presents a danger to the community and to Victim 1 in particular, and his level of obsession shows there is a serious risk that the defendant's intimidation and threats aimed at the victims will resume prior to trial. Accordingly, the government respectfully submits that a detention hearing is necessary, and the defendant should be detained at the conclusion of that hearing.

The Court must weigh several factors to determine whether there are conditions of release that will both reasonably assure the appearance of the defendant and will assure the safety of the community. First, the court must examine the "nature and circumstances of the offense charged, including whether the offense is crime of violence." *Id.* § 3142(g)(1). Second, it must look at the "weight of the evidence against the person." *Id.* § 3142(g)(2). Third, it must examine the history and characteristics of the defendant. *Id.* § 3142(g)(3). Finally, it must weigh "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." *Id.* § 3142(g)(4). The balance of these factors weighs in favor of detention.

**A. Nature and Circumstances of the Offense, and the Weight of the Evidence**

As described above, the nature and circumstances of this offense are serious and frightening. The defendant targeted a coworker with antisemitic threats over the course of approximately seven months using anonymous accounts created with untraceable e-mails. When the victims added security measures to their home after the initial posts, the defendant mocked them, noting that such systems would not save them from being harmed:




The defendant invoked the Holocaust, Adolph Hitler, and the October 7th terrorist attack in Israel to send an unequivocal message that the victims were in serious danger. There can be no mistaking the intent of these posts—the defendant wanted the victims to fear for their lives. The defendant even used the name of Victim 1's newborn child to ensure that this message was received, saying "Jew, watch your [minor child's name]. There shall be a sign." Warning the victim to watch his minor child is a clear, heightened threat and demonstrates the measures the defendant was willing to take to threaten and alarm Victim 1. This factor weighs clearly in favor of detention.

Additionally, the weight of the evidence is very strong. Records obtained from X, Verizon, and Haverford College show that the defendant was the person who created and operated the four anonymous accounts that threatened Victim 1. In fact, Haverford College records show that the defendant's Haverford College email account was used to authenticate the device that operated the accounts. In short, the electronic evidence obtained in this case directly links the defendant to the threatening accounts. Additionally, when the defendant was arrested on

October 6, 2026, he admitted to FBI agents that he created and used the accounts listed above after he was given *Miranda* warnings. This factor therefore weighs heavily in favor of detention.

The Court should also consider the context of these charges, which makes clear that there is no condition or combination of conditions that will prevent the defendant from harassing his victims while on release. Specifically, the Court should consider *how* the defendant committed these crimes. Despite the strong electronic evidence linking the defendant to these accounts, the evidence also showed that he tried to obfuscate his ownership of the accounts and mask his identity from law enforcement. He created them using untraceable e-mail accounts. He often employed Virtual Private Networks, or VPNs, which prevent law enforcement from tracing IP connections between the X accounts and the true user. This shows that the defendant exercised care and put forth effort to remain anonymous. Thus, any condition involving electronic monitoring will not mitigate any danger that Ha poses—he will be able to circumvent any such monitoring, and can use anonymous accounts to harass his victims. *United States v. Kyle*, No. CR 25-122-KSM, 2025 WL 1519908, at *7 (E.D. Pa. May 28, 2025) (Marston, J.) (finding that electronic monitoring and home confinement would not limit defendant's danger to community because "electronic monitoring and home confinement do not guarantee that [a] defendant will not ... endanger the community, where the defendant had expertise in cybersecurity and understood how to use cyber tools.") (internal citations omitted); *cf. United States v. Benevolence International Foundation, supra,* 222 F.Supp.2d 1005, 1007 (N.D. Ill. 2002) (electronic surveillance systems can be circumvented and the monitoring equipment can be rendered inoperative; electronic monitoring does not stop a person from fleeing).

Indeed, there is simply no way to effectively monitor this defendant's online activities, for the following reasons: (1) Access to the internet is possible through desktop and laptop

computers, cell phones, iPods, iPads, and even gaming devices. There is no way to prevent the defendant from purchasing or using an Internet accessible device without the knowledge of Pretrial Services. (2) Storage devices can range in size, down to the size of a postage stamp, making it impossible for a Pretrial Services officer to locate. There is no way to prevent the defendant from obtaining any storage medium, and no amount of supervision that would detect it in his home or elsewhere. (3) There is no way to monitor whether the defendant will access the Internet using family members' or friends' electronic equipment, or Internet access at any other location, given that there is free WiFi access from any number of public places. (4) Even if this Court were to order that computer monitoring software be installed on the defendant's home computer(s), there would be no way to detect if he were to subvert the computer monitoring software by simply inserting a device with its own operating system into the computer being monitored, thereby bypassing the monitoring software altogether. The defendant's activities would be completely undetected, and the Pretrial Services officer – and this Court – would instead be issued a report that the defendant is in "compliance."

**B. History and Characteristics of the Defendant**

The defendant is employed and has a residence in the same community as the victim. Any community ties should, however, be viewed with skepticism. Those ties were not enough to stop him from committing his charged crimes, and there is no condition that will prevent him from committing crimes like this again. In fact, these crimes were committed *within* his home. Moreover, this Court has explained that community ties were not enough to "ameliorate against Defendant's danger to the community, in particular as to [the defendant's victims]." *United States v. Kyle*, No. CR 25-122-KSM, 2025 WL 1519908, at *6 (E.D. Pa. May 28, 2025) (Marston, J.). *See* also *United States v. Thompson*, No. 4:16-CR-00019-19, 2018 WL 447331, at

*5 n.50 (M.D. Pa. Jan. 17, 2018) ("Community ties have limited weight in the context of assessing whether a defendant presents a danger to the community."). That is particularly true in this case, where the defendant leveraged his community ties to the victim to *escalate* the severity of his threats by including details in his posts that only a person with real-world access to the victims' home would know.

The lack of recent threatening activity toward the victims should also not suggest that the defendant no longer presents a danger to the community. The defendant previously ceased his threatening activity for about three months (between October 2025 and January 2026) before resuming. In doing so, he has demonstrated that his terrorizing course of conduct was not fleeting or the product of a momentary lapse in judgment. To the contrary, his choice to threaten the victims was the result of longstanding hatred and bias, which could be resumed at any time.

In fact, the FBI is currently seeking subscriber records for another account that was created in September 2026 (the "New Account") and that is associated with conduct consistent with accounts admittedly operated by the defendant.[6] That New Account began replying to Victim 1's posts on X on September 25, 2026, and the content of those messages tracks the posts previously made by the defendant. For example, on October 4, 2026, the New Account replied to a post made by Victim 1 discussing an upcoming event on Haverford College's campus. In that post, the anonymous New Account referenced the October 7, 2026, terrorist attacks in Israel and encouraged that Jewish people be "exterminated." That same day, the anonymous New Account tagged Victim 1 in a post alleging that Victim 1 cheated to get an American passport. These posts mirror posts previously made by the defendant, in which he replied to a post from Victim 1

[6] The FBI is awaiting electronic records to confirm the identity of the individual who created this account.

stating, "Let there be an October 7 all day every day. Make it 6 million. Exterminate the jews." It also mirrors multiple posts in which the defendant alleged that Victim 1's citizenship was based on fraudulent representations.

Most troublingly, on October 5, 2026, the anonymous New Account replied to a post made by Victim 1 and taunted Victim 1, telling Victim 1 to send Victim 1's kids outside into the front yard to "play." This directly mirrors previous posts made by the defendant and strongly suggests that he has resumed his online activity targeting Victim 1 and Victim 1's family.

### C. Nature of the Danger Posed by the Defendant

The defendant's threats caused the victims to fear for their lives. Victim 2 was so scared that Victim 2 moved out of the family's home on two separate occasions, taking along their three minor children. The family's life has been completely changed by the defendant's choice to engage in a course of conduct targeting them with disturbing, persistent threats. In fact, they have considered moving from their home altogether because the defendant has instilled terror in them. He should not be permitted the opportunity to resume this activity while awaiting trial. He should be detained.

## IV. CONCLUSION

When all these factors are viewed in light of the sentence defendant faces if convicted, it is clear that no condition or combination of conditions will reasonably assure the safety of the community.

WHEREFORE, the government respectfully submits that its Motion for Defendant's Pretrial Detention should be granted.

Respectfully submitted,

DAVID METCALF
United States Attorney

/s/ *Anthony J. Carissimi*
ANTHONY J. CARISSIMI
SIMA KAZMIR
MARK DUBNOFF
Assistant United States Attorneys

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **:** | |
| **v.** | **:** | **CRIM. NO. 26-cr-491** |
| **GUANGTIAN HA** | **:** | |

**PRETRIAL DETENTION ORDER**

AND NOW, this ____ day of October, 2026, after an evidentiary hearing and argument of counsel for the government and the defendant, the Court finds that this case is appropriate for detention because the government has proved by clear and convincing evidence that no condition or combination of conditions will reasonably assure the defendant's appearance as required and/or the safety of the community, pursuant to 18 U.S.C. §§ 3142(e) and 3142(f)(1).

The Court makes the following findings of fact:

1. Guangtian Ha was indicted by a federal grand jury for one count of cyberstalking, in violation of Title 18, United States Code, Section 2261A(2). The charges arise from a series of threatening, harassing and intimidating messages that Ha posted on X (formerly Twitter), using multiple anonymous accounts, targeting Victim 1 and their family.

2. The evidence in this case is strong, and consists of records from X, Verizon and other providers connecting the accounts used to commit the crime with the defendant.

3. The defendant faces a statutory maximum penalty of 5 years' imprisonment, three years of supervised release, a $250,000 fine, and a $100 special assessment.

4. The nature and circumstances of the offense, including Ha's use of Virtual Private Networks and numerous anonymous online accounts, as well as his history with and proximity to the victims, indicate that there is substantial risk that Ha will continue to harass and intimidate victims, despite any conditions prohibiting him from doing so.

5. The strength and nature of the case against the defendant, combined with the strong likelihood that the defendant will be incarcerated for a significant period of time and the nature of the offenses, establishes the defendant's danger to the community.

Therefore, IT IS ORDERED that the defendant be committed to the custody of the Attorney General for confinement in a correction facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal; that the defendant be afforded reasonable opportunity for private consultation with counsel; and that, on order of a Court of the United States, or on request of an attorney for the government, the person in charge of the corrections facility in which the defendant is confined deliver the defendant to a United States Marshal for the purpose of an appearance in connection with a court proceeding.

BY THE COURT:

____________________________________

HONORABLE SCOTT W. REID
*United States Magistrate Judge*